UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

ALFRED SAVOY JR                               CASE NO. 6:18-CV-00874

VERSUS                                        JUDGE ROBERT R. SUMMERHAYS

LAFAYETTE CITY-PARISH                         MAGISTRATE JUDGE DAVID J. AYO
CONSOLIDATED GOVERNMENT ET AL

### REPORT AND RECOMMENDATION

Before this Court is a MOTION FOR SUMMARY JUDGMENT filed by defendant Lafayette City-Parish Consolidated Government ("LCG"). (Rec. Doc. 35). The motion is unopposed. The undersigned issues the following report and recommendation pursuant to 28 U.S.C. § 636. Considering the evidence, law, and argument, and for the reasons explained below, this Court recommends that LCG's motion be GRANTED and, accordingly, all claims by Plaintiff Alfred Savoy, Jr. be DISMISSED WITH PREJUDICE.

### Factual Background

This civil rights suit arises from Savoy's arrest on the evening of July 5, 2017 in Lafayette, Louisiana. (Rec. Doc. 1 at ¶ 6). Savoy alleges he was mistaken for an intruder when he "unknowingly, inadvertently and without any mala fide intention" entered residences located at 301 and 306 S. Hamner Street. (*Id.* at ¶¶ 7–8). Savoy claims that a resident of these properties drew a gun on him, believing him to be an unknown person who had previously stolen a truck from the residence. (*Id.* at ¶¶ 7, 9). As he fled in apprehension of being shot, Savoy alleges he was stopped by

unknown police officers of the Lafayette Police Department ("LPD"), handcuffed, and forced to lie on the ground. Savoy denies that he resisted arrest in any way. (*Id.* at ¶ 11). Despite his cooperation in the arrest, Savoy claims the officers set a police K-9 loose on him and permitted the dog to "maul and bite" him as he lay defenseless on the ground. (*Id.* at ¶12). Savoy alleges he sustained serious injuries because of the mauling and that the officers withheld medical treatment from him for approximately one hour, leaving him to sit in the police car before transporting him to University Hospital and Clinics ("UHC").[1] (*Id.* at ¶ 13).

After arriving at UHC, Savoy claims the unknown police officers would not allow UHC medical staff to stitch his wounds and, instead, "chose to perform sutures themselves, which led to infection and swelling of the wounds." (*Id.* at ¶ 14). Savoy was booked into Lafayette Parish Correctional Center ("LPCC") soon after being discharged from UHC. (*Id.* at ¶ 15).

On July 5, 2018, Savoy filed the instant suit against LCG and Unknown Police Officers, asserting claims for civil rights violations under 42 U.S.C. §§ 1983 and 1988 and LA. CIV. CODE ART. 2315. (Rec. Doc. 1, generally). LCG answered Savoy's suit, denying all claims. (Rec. Doc. 5). LCG additionally moved for a stay of this suit pending conclusion of criminal proceedings against Savoy stemming from the events now at issue. (Rec. Doc. 6). This Court granted the stay as unopposed and directed

---

[1] Savoy's Complaint erroneously names the relevant medical facility as "UMC" but there is no dispute as to the location of Savoy's medical treatment, properly identified as University Hospital and Clinics ("UHC"). (Rec. Docs. 1 at §13 and 35-7, generally). UHC was previously known as University Medical Center.

2

the filing of a joint status report on the pending criminal matter, *State of Louisiana v. Alfred Savoy, Jr.*, Docket No. 2018-CR-164209, 15th Judicial District Court, Lafayette, Louisiana. (Rec. Doc. 7).

On March 25, 2020, Savoy's attorney moved to withdraw from this case. (Rec. Doc. 11). Following a telephone status conference, this Court permitted counsel to withdraw. (Rec. Docs. 13, 14). On October 3, 2023, LCG updated the Court on the status of the underlying criminal action, explaining that Savoy had pled guilty to the following: (1) resisting a police officer with force or violence in violation of La. R.S. 14:108.2; and (2) a single count of unauthorized entry of a dwelling in violation of La. R.S. 12:62.3. In exchange for Savoy's plea, the State dismissed a second count of unauthorized entry with which Savoy had been charged. (Rec. Doc. 24 at p. 1). LCG reported sending correspondence to Savoy, now acting *pro se* in this matter, regarding its intention to lift the stay based on the conclusion of the criminal proceedings, but the mailing was returned undelivered. (*Id.*, citing Exhibit B thereto). LCG also requested a telephone conference to discuss the status of the case. (*Id.* at p. 2).

A telephone conference was held on October 31, 2023. Savoy participated in his capacity as a *pro se* litigant, along with counsel for LCG. Based on the discussion during the teleconference, the stay was lifted and pretrial conference and trial dates were selected. The undersigned reminded Savoy of his duties as a *pro se* litigant with which he agreed. (Rec. Docs. 25, 27, 28).

LCG filed the instant motion seeking dismissal of all claims. (Rec. Doc. 35). By Notice of Motion Setting issued January 24, 2023, a briefing schedule was set by

3

the Court. (Rec. Doc. 36). After referral of this motion to the undersigned Magistrate Judge for further review, an in-person status conference was held on February 23, 2024. (Rec. Doc. 41). During the status conference, this Court addressed a claim by Savoy that he did not receive notice of the filing of LCG's motion. After considering the argument and evidence presented, this Court found that LCG had established proper service of the motion and, for this reason, the delays set forth in the Notice of Motion Setting were applicable. (*Id.*). Consequently, LCG's motion remains unopposed. Additionally, this Court found no basis for Savoy's allegations, found within the letter attached to his Rule 26(f) Report, of defense counsel's interference with his efforts to obtain new counsel in this case. (*Id.*).

Based on the foregoing, the undersigned finds the motion ripe for consideration.

## **Applicable Standards**

Rule 56 of the Federal Rules of Civil Procedure directs entry of summary judgment as to any claim or part thereof, as to which a movant demonstrates the absence of any genuine as to any material fact resulting in the entitlement of the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" when its existence or nonexistence might reasonably be expected to impact the outcome of one or more claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

A party seeking summary judgment has the burden of informing the court of the basis of its motion and identifying those parts of the record that demonstrate the

absence of genuine issues of material fact. *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the movant successfully carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of one or more genuine issues of material fact presenting a basis for denial of summary judgment. *Id.* The court must construe all facts and inferences in the light most favorable to the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Matsushida Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

A movant may carry its initial burden by pointing out an absence of proof as to one or more required elements of any claim by the nonmoving party. *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008) (citing *Celotex*, 477 U.S. at 325). In such an instance, the burden shifts to the nonmoving party to produce evidence to support the essential elements of his claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

## Analysis

### *Excessive Force Claims*

Savoy's Complaint asserts claims for excessive force against LCG under federal and state law. (Rec. Doc. 1 at ¶¶ 18, 19, 23). Savoy claims a group of unknown officers permitted a police drug dog to maul him while he was handcuffed. (*Id.* at ¶¶ 1 – 19). LCG seeks dismissal of Savoy's excessive force claims as barred under the *Heck* doctrine.

> [T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by

> actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994).

Federal excessive force claims are cognizable under Section 1983 via the Fourth Amendment, while Louisiana excessive force claims are cognizable as intentional torts under LA. CIV. CODE ARTS. 2315, *et seq. Graham v. Connor*, 490 U.S. 386, 396 (1989); *Kyle v. City of New Orleans*, 353 So. 2d 969, 972 (La. 1977). The *Heck* doctrine is applied uniformly to excessive force claims under federal and Louisiana law. *Price v. City of Bossier*, 841 Fed. App'x. 650, 654 (5th Cir. 2021) (citing *Williams v. Harding*, 117 So. 3d 187, 191 (La. App. 1 Cir. 4/26/13); *Deville v. Marcantel*, 567 F.3d 156, 172-73 (5th Cir. 2009); *Kyle, supra.*

LCG demonstrates that Savoy pled guilty to resisting arrest and unauthorized entry of a dwelling. (Rec. Doc. 35-5 at p. 1). Savoy offers no evidence that his conviction on these counts has been reversed, expunged, or otherwise invalidated. Savoy's Complaint broadly claims that the force used during his arrest was excessive because he did not resist the arrest in any way. (Rec. Doc. 1 at ¶¶ 11–12). For this reason, Savoy's excessive force claims do not rest on "temporally and conceptually distinct" facts from those facts upon which Savoy was convicted for resisting arrest. *Aucoin v. Cupil*, 958 F.3d 379, 382 (5th Cir. 2020) (*Heck* will not bar claims based on excessive force arising after the plaintiff's resistance to arrest abated); *Bush v. Strain*,

513 F.3d 492, 498 (5th Cir. 2008). Accordingly, his excessive force claims under federal and state law present an attack on the factual underpinnings of his conviction for resisting arrest and are barred by *Heck* and its progeny. *Ducksworth v. Rook*, 647 F. App'x. 383, 386 (5th Cir. 2016); *Arnold v. Town of Slaughter*, 100 F. App'x. 321, 325 (5th Cir. 2004). Considering the foregoing, this Court will recommend that LCG's motion be granted as to Savoy's federal and state excessive force claims.

### *Deliberate Indifference Claims*

Savoy's Complaint alleges that he was injured by the police K-9 and was denied medical treatment for an unreasonable period of time following his arrest. (Rec. Doc. 1 at ¶¶ 1–19). The Due Process Clause of the Fourteenth Amendment guarantees medical care to a person injured during arrest. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243–44 (1983); *Ford v. Anderson Cnty., Tex.*, 90 F.4th 736, 752 (5th Cir. 2024). A violation of that right occurs where officers are deliberately indifferent to a detainee's serious illness or injury. A finding of deliberate indifference must be based on evidence that the defendant subjectively knew of a substantial risk of harm to the detainee and effectively disregarded that risk. *Aguirre v. City of San Antonio*, 995 F.3d 395, 421 (5th Cir. 2021) (citing *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006)). Deliberate indifference claims under Louisiana law are evaluated according to the same standard. (*Breach v. Copes*, 2007 WL 4327842 at * 4 (La. App. 3 Cir. 12/12/07)).

In support of its motion for summary judgment as to Savoy's deliberate indifference claims, LCG offers the body camera footage from three LPD officers

7

involved with Savoy's arrest, as well as Savoy's medical records from the night of his arrest. (Rec. Docs. 35-6, 35-7). This Court has thoroughly reviewed this evidence and observes no basis for a finding of deliberate indifference. The video evidence shows the moment of Savoy's apprehension and Savoy's refusal to comply with the officers' repeated instructions to place his hands behind his back. (Rec. Doc. 35-6). Savoy's non-compliance continues with his attempts to arise from the prone position, despite being warned to remain prone and to place his hands behind his back, failing which the officers would deploy the K-9. (*Id.*). The videos show use of the K-9 while Savoy continued to struggle against being handcuffed, but that the designated K-9 handler called the dog off as soon as Savoy was forcibly handcuffed. (*Id.*). The time of Savoy's bite from the K-9 was approximately 11:44:10 p.m. (*Id.*). Medical records show that Savoy was transported to UHC and arrived at approximately 1:21 a.m. (Rec. Doc. 35-7 at pp. 14, 100).

Taken together, the video and medical record evidence establish that Savoy was arrested, transported to UHC for treatment, and treated for his injuries upon arrival, and that his transport to UHC and treatment were not unreasonably delayed. Upon arrival, Savoy was restrained, given medications, and his dog bite puncture wound was cleaned and sutured. Savoy's Complaint, filed by his former counsel, alarmingly claims that the officers who transported him to UHC sutured Savoy's wound themselves and that the hospital staff attending Savoy permitted this to occur. (Rec. Doc. 1 at ¶ 14). The video and medical record evidence do not support Savoy's claim. Such evidence does demonstrate Savoy's irrational, uncooperative, and erratic

8

behavior during the events in question, thereby further undermining the claims made in the Complaint.

Medical records indicate that Savoy sustained "[two] puncture wounds to posterior thigh and small superficial abrasions…to posterior thigh." (Rec. Doc. 35-7 at p. 110). These records contain no indication of serious blood loss, damage to ligaments, joints, or tissues requiring treatment in addition to wound cleaning and sutures. Similarly, routine wound care precautions were given at discharge. (*Id.* at pp. 27–8). Considering the chaos of the scene at the time LPD arrived and the standard logistical concerns of the officers as shown in the body camera footage, the interval between Savoy's bite and his arrival at UHC was not unreasonable and did not result in any demonstrable harm. *Easter*, 467 F.3d at 463 (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)).

Considering the facts as shown by the evidence, this Court does not find that any officer participating in the events of Savoy's arrest on July 5, 2017 was deliberately indifferent to any serious injury sustained by Savoy during apprehension. Accordingly, this Court will recommend summary judgment be granted in favor of LCG as to Savoy's federal and state deliberate indifference claims.

### *Respondeat Superior and Vicarious Liability Claims*

Savoy's Complaint alleges liability on LCG's part for the alleged actions of the Unknown Police Officers during and after his arrest. (Rec. Doc. 1 at ¶¶ 22–25). Having found that Savoy's underlying claims against the unnamed individual defendants fail as a matter of law, Savoy's claims against LCG as the officers'

9

employer, based on the theories of *respondeat superior* and vicarious liability, also fail. *Kyser v. Metro Ambulance, Inc.*, 764 So. 2d 215, 218–19 (La. App. 2 Cir. 6/21/00) (no vicarious liability of an employer can exist without an underlying liability of the employee). Even if this Court were to find that an LCG employee did engage in excessive force or deliberate indifference, Savoy identifies no LCG policy, practice, or custom upon which liability for any act of its employees may be based. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Savoy's Complaint features only conclusory allegations regarding policy and training and does not allege facts that would support municipal liability under *Monell*. Accordingly, this Court will recommend that summary judgment be granted in LCG's favor as to all such claims.

### *Unknown Police Officer Defendants*

LCG asserts that Savoy's suit names only LCG as a defendant and that Savoy's failure to amend to name the individual LPD officers as defendants merits dismissal of these fictitious defendants. (Rec. Doc. 35-3 at pp. 7–9). Although no federal rule prohibits commencing a suit against a John Doe defendant when the party's identity is unknown at the time of filing, dismissal is warranted where, as here, plaintiff makes no effort to discover the John Doe defendants' identities or to amend to correctly name such parties. Moreover, where no service has been made on such a party within the applicable statute of limitations, dismissal is appropriate. *Stumpf v. City of Waxahatchie*, 2004 WL 2413306 *2 (N.D. Tex. 10/26/04). Suits under 42 U.S.C. § 1983 are subject to the forum state's general personal injury limitations period. *Brown v. Pouncy*, 93 F.4th 331, 332 (5th Cir. 2024) (citing *Owens v. Okure*,

488 U.S. 235, 249–50) (1989)). Pursuant to LA. CIV. CODE ART. 3492, Savoy's claims are subject to Louisiana's one-year liberative prescriptive period. (*Id.*). The record establishes that Savoy's claim accrued on July 5, 2017. (Rec. Doc. 35-4). Savoy's suit was timely filed under Article 3492 on July 5, 2018. (Rec. Doc. 1, generally). A stay was not entered until November 7, 2018. (Rec. Doc. 7). The Court lifted the stay on or about October 11, 2023. (Rec. Doc. 25). Savoy does not argue that he sought to ascertain the identities of the "Unknown Police Officers" named in his Complaint. The record demonstrates that this information was readily ascertainable. (*See*, Rec. Doc. 35-6).

As discussed above, Savoy does not oppose the instant motion and, accordingly, has not sought leave to amend his Complaint in response thereto. Given the foregoing, this Court will not recommend that Savoy be permitted to amend his Complaint. The evidence before this Court demonstrates any such amendment to name the individual officers involved in Savoy's arrest would be futile. Fed. R. Civ. P. 15(a); *Stripling v. Jordan Prod. Co.*, LLC, 234 F.3d 863, 872–73 (5th Cir. 2000) (internal citations omitted).

## Conclusion

For the reasons discussed herein, the Court recommends that Lafayette City-Parish Consolidated Government's MOTION FOR SUMMARY JUDGMENT be GRANTED and, accordingly, all claims by plaintiff Alfred Savoy, Jr. against Lafayette City-Parish Consolidated Government and the defendants referred to as "Unknown Police Officers" be DISMISSED WITH PREJUDICE pursuant to Fed. R. Civ. P. 56.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

**THUS DONE** in Chambers, Lafayette, Louisiana on this 17 day of May, 2024.

_____
**DAVID J. AYO**
**UNITED STATES MAGISTRATE JUDGE**